**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1630**

MONICA P. QUINTANA,

            Plaintiff – Appellant,

      v.

CITY OF ALEXANDRIA,

            Defendant – Appellee,

      and

RANDSTAD US L.P.; LISA BAKER; KOURTNEY HARRIS,

            Defendants.

---------------------------------------

CENTRO DE LOS DERECHOS DEL MIGRANTES; NATIONAL EMPLOYMENT
LAW PROJECT, INC.; NORTH CAROLINA JUSTICE CENTER; PUBLIC JUSTICE
CENTER,

            Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Leonie M. Brinkema, District Judge.  (1:15-cv-01553-LMB-JFA)

Argued:  May 10, 2017                           Decided:  June 6, 2017

Before GREGORY, Chief Judge, and SHEDD and WYNN, Circuit Judges.

Reversed and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

**ARGUED:** Patrick Daniel Llewellyn, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Michelle DeFinis Gambino, GREENBERG TRAURIG LLP, McLean, Virginia, for Appellee. **ON BRIEF:** Michael T. Kirkpatrick, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant. Kevin B. Bedell, Michael A. Hass, GREENBERG TRAURIG LLP, McLean, Virginia, for Appellee. Catherine K. Ruckelshaus, NATIONAL EMPLOYMENT LAW PROJECT, New York, New York, for Amici Curiae.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Monica P. Quintana appeals the district court's order dismissing her claims against the City of Alexandria pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, we reverse the district court's order and remand for further proceedings.

I.

Because this appeal stems from a dismissal under Rule 12(b)(6), we accept the facts as alleged in Quintana's First Amended Complaint ("the complaint"). *LeSeur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). In 2011, Quintana began working for the City of Alexandria ("the City"). Her job entailed answering phone calls from residents and directing callers to the appropriate City department. The City told Quintana that her position was temporary, but would become permanent in one year. Approximately a year later, the City requested that Randstad US, L.P. ("Randstad") begin administering payroll and performing related administrative functions for Quintana's position. The City attempted to characterize Randstad as Quintana's new employer, but also presented the change as a condition of Quintana's continued employment with the City. The City told Quintana that all other aspects of her employment would remain the same. Quintana completed an application form at Randstad but was instructed not to complete various sections. For the rest of Quintana's time in the position, Randstad's role remained limited to payroll and related administrative functions. Although she was a full-time employee, Quintana did not receive any employment benefits from either the City or Randstad. Quintana continued to report only to City supervisors regarding all matters not

3

related to payroll. The City continued to control Quintana's amount of compensation, job title, schedule, job function and day-to-day work duties, supervision, performance evaluation, and termination of employment.

On January 9, 2014, Quintana learned that her husband had been hospitalized and was in a coma. Later that day, Quintana asked her supervisor, Lisa Baker, who was a City employee, if she could take leave to care for her husband. Baker told Quintana that she could take leave without losing her job, as long as she was not gone for more than three months. No one at the City indicated that Quintana was required to notify or obtain approval from Randstad to take leave. However, Quintana still notified Randstad that she was taking leave to care for her husband, with permission from the City. On January 10, Quintana requested any necessary Family and Medical Leave Act ("FMLA") forms from the City, which the City never provided, and began her leave. Quintana updated her supervisors and co-workers at the City throughout the following week regarding her husband's condition and the status of her leave. On January 16, Quintana notified Baker that she hoped to return to work soon. However, on January 17, Baker emailed Quintana indicating that because the City had not heard from her in over a week, the City had replaced her. This email was the only notice of Quintana's termination. The City did not provide Quintana with any notice about her rights and responsibilities under the FMLA before her termination. Quintana unsuccessfully sought reinstatement or alternative employment numerous times from the City and from Randstad.

4

## II.

Quintana sued the City and Randstad alleging violations of her rights under the FMLA, 29 U.S.C. § 2601 *et seq.* Quintana alleged that the City, as her primary employer, and Randstad, as her secondary employer, both denied her rights under the FMLA and retaliated or discriminated against her for the exercise of those rights. In the alternative, Quintana alleged that Randstad was her primary employer and the City was her secondary employer. The City moved to dismiss under Rule 12(b)(6), arguing that it could not be liable under the FMLA because the complaint, as a matter of law, failed to establish that the City was Quintana's employer. The district court held oral argument and subsequently granted the City's motion as to all claims. After the City was dismissed from the case, Randstad made an Offer of Judgment under Rule 68 of the Federal Rules of Civil Procedure, which Quintana accepted. Accordingly, the district court entered final judgment for Quintana against Randstad.

## III.

We review the district court's dismissal of Quintana's FMLA claims de novo. *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012). At the motion to dismiss stage, we accept as true all of the well-pleaded allegations and view the complaint in the light most favorable to Quintana. *LeSeur-Richmond Slate Corp.*, 666 F.3d at 264. To survive the Rule 12(b)(6) motion, Quintana's complaint must establish facial plausibility by pleading factual content that allows the court to draw the reasonable inference that the City is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

Where applicable, the FMLA entitles employees to take leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 U.S.C. § 2601(b)(2). The FMLA provides covered employees with the substantive right to twelve workweeks of leave during any 12-month period, *id.* § 2612(a)(1), for family and health-related issues, as well as a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position," *id.* § 2614(a)(1)(A)–(B).

Quintana alleges she was jointly employed by the City and Randstad. In the FMLA context, a joint employment relationship exists where two employers, a primary and a secondary employer, "exercise some control over the work or working conditions of the employee." 29 C.F.R. § 825.106(a). Only the primary employer is responsible for giving required notices to employees and providing FMLA leave. *Id.* § 825.106(c). The primary employer is also primarily responsible for job restoration following FMLA leave. *Id.* § 825.106(e). The secondary employer, however, is responsible for "accepting the employee returning from FMLA leave . . . if the secondary employer continues to utilize an employee from the temporary placement agency, and the agency chooses to place the employee with the secondary employer." *Id.* (the "conditional reinstatement obligation"). In determining which of two joint employers is the primary employer, factors considered include authority or responsibility to hire and fire, assign or place the employee, make payroll, and provide employment benefits. *Id.* § 825.106(c).

Claims of alleged violations of these prescriptive rights are known as "interference" or "entitlement" claims. *Yashenko v. Harrah's NC Casino Co., LLC*, 446

F.3d 541, 546 (4th Cir. 2006). Interference claims arise under 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." The regulations provide that interference with the exercise of an employee's rights would include, for example, refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulation to avoid responsibilities under the FMLA. *See* 29 C.F.R. § 825.220(b).

Additionally, the FMLA protects covered employees from discrimination or retaliation for exercising their substantive rights under the FMLA. *Yashenko*, 446 F.3d at 546. These claims are known as "retaliation" or "discrimination" claims and arise under 29 U.S.C. § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Quintana asserts both an interference claim (Count One) and a discrimination or retaliation claim (Count Two) against the City as her primary employer, and in the alternative, as her secondary employer. The district court, however, assumed that the City of Alexandria would be considered a joint employer and was the secondary employer. The court subsequently concluded that Quintana had not alleged sufficient facts to state a claim against the City.

We disagree.[1] Quintana has alleged sufficient facts that the City was her primary employer, and therefore had the responsibility to provide FMLA leave and restore her to her job following leave.[2] Namely, Quintana alleged that the City is her primary employer based on its exclusive control over her hiring, firing, work assignment, and work conditions. Considering the 29 C.F.R. § 825.106(c) factors in determining who is the primary employer, Quintana alleged facts relevant to those factors, which, taken in the light most favorable to her, indicate the City could be her primary employer. The first two factors indicate the City is the primary employer and the other factors are neutral or inapplicable. With regard to the first two factors, Quintana alleged that the City had the authority and responsibility to hire and fire her and to assign or place her. Quintana asserted that the City unilaterally interviewed, hired, assigned, evaluated, and terminated her. As to the third factor, while Randstad did make payroll, Quintana alleges that the City determined her amount of compensation. Finally, the fourth factor appears inapplicable, as Quintana alleges that neither the City nor Randstad provided employment

---

[1] At oral argument, the district court heard numerous factual representations that fell outside the complaint. Without addressing whether the court improperly considered these facts, we hold that the complaint on its face states a sufficient claim to relief.

[2] The City contends that Quintana should be estopped from claiming that the City is her primary employer based on her alternative argument that the City is liable as her secondary employer. The City's arguments are without merit. In this case, Quintana merely pled in the alternative, without asserting conflicting factual allegations, which is permissible under Federal Rule of Civil Procedure 8(d)(2)-(3). On appeal, Quintana also argues that the City is her sole employer. Because the complaint alleges throughout that the City and Randstad are joint employers, we do not credit that argument.

benefits to her. It is not fatal to Quintana's complaint that all factors do not strongly indicate that the City is her primary employer.

Quintana has pled sufficient facts to state a claim against the City. Quintana alleged facts that, under the FMLA, she is an eligible employee and the City is a covered employer. Quintana also alleged facts that her husband's hospitalization was a "serious health condition" entitling her to take leave under the FMLA and that she gave the City appropriate notice of her intention to take leave. With regard to Count One, Quintana has pled sufficient facts to state an interference claim against the City under 29 U.S.C. § 2615(a)(1). The complaint alleges numerous instances of conduct by the City, which, construed most favorably to Quintana, could establish that the City, as her primary employer, unlawfully interfered with or denied FMLA benefits. This conduct includes but is not limited to, failing to give proper notice or approval of Quintana's request for FMLA leave, failing to restore Quintana to her position or a substantially equivalent position, and terminating Quintana's employment while she was on FMLA qualifying leave.

Further, Quintana states an interference claim against the City as a secondary employer in Count One. Aside from the conditional reinstatement obligation, "[a] secondary employer is also responsible for compliance with the prohibited acts provisions with respect to its jointly employed employees . . . ." 29 C.F.R. § 825.106(e). 29 U.S.C. § 2615(a)(1)–(2) prohibits interference and retaliation by *any* employer, including secondary employers. *See* 29 C.F.R. § 825.106(e); *see also Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 346 (5th Cir. 2013); *Grace v. USCAR*, 521 F.3d 655, 667

9

(6th Cir. 2008). The district court found the City could not be liable as a secondary employer because Quintana did not allege that the City violated the conditional reinstatement obligation by failing to accept Quintana's reinstatement (at Randstad's direction) after her FMLA leave. However, Quintana made numerous factual assertions that the City interfered with her FMLA rights, regardless of whose obligation it was to provide leave and reinstatement. At minimum, her assertion that the City falsely granted her permission to take FMLA leave instead of directing her to Randstad for approval sufficiently states an interference claim. The complaint states that Quintana's supervisor Baker, a City employee, approved her FMLA leave request and told her not to worry about losing her job. Construed most favorably to Quintana, these facts indicate that the City, by approving her leave when it had no authority to do so as a secondary employer, could have interfered with her right to seek leave *from Randstad*.

With regard to Count Two, Quintana alleges sufficient facts to state a discrimination or retaliation claim against the City under 29 U.S.C. § 2615(a)(2). Construed in the light most favorable to Quintana, the January 17 email from Baker terminating Quintana because she took leave states sufficient factual allegations that the City terminated Quintana as a result of her engaging in FMLA-protected activity. Neither primary nor secondary employers may retaliate or discriminate based on FMLA-protected conduct; thus, Quintana states a claim in Count Two regardless of the City's status as a primary or secondary employer.

IV.

For the reasons explained above, we reverse the district court's order granting the City's motion to dismiss and remand for further proceedings in the district court.

*REVERSED AND REMANDED*